UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

LANCE CARTER,

                 **DEFENDANTS' MOTION**
                 **IN LIMINE**

      Plaintiff,         9:12-CV-1746

  -against-            GLS / DJS

M. BROCKLEY, K. ANDERSON,
B. NORTH, A. CHARRON, and
C.S. COLLINS,

      Defendants.

----------------------------------------------------------------X

   On February 5, 2016, the Plaintiff filed his list of prospective witnesses (Dkt 178), and on April 18, 2016 he filed his list of prospective exhibits (Dkt 199). These filings indicate that the Plaintiff apparently seeks to litigate issues that are irrelevant to the Eighth Amendment claim arising out of the use-of-force incident of October 22, 2011. For the reasons that follow, the Defendants respectfully request that the Court issue evidentiary rulings at the outset of the trial, so as to limit the proof before the jury in the following respects.

   **1.  The Court should preclude any evidence relating to any claims already dismissed in this action.**

   Plaintiff's witness list (Dkt 178) includes former Superintendents Bezio and Racette as witnesses he wants to call. The Court should preclude Plaintiff from seeking to subpoena either

of these former DOCCS employees at the upcoming trial.  In a report-recommendation dated February 27, 2015 (Dkt 149), adopted on March 25, 2015 (Dkt 152), this Court granted partial summary judgment dismissing all claims asserted by the Plaintiff, as against two former Superintendents at Great Meadow Correctional Facility, Norman Bezio and Steven Racette. Neither of these putative Defendants witnessed the use of force incident that occurred on October 22, 2011, and there is no apparent testimony that could be elicited from either witness that would be relevant to the issues that remain for trial.  Plaintiff's stated purpose in calling such witnesses is to inquire as to the nature and extent of staff training regarding use of force, and investigation that was conducted by DOCCS and any other agencies, with respect to the incident of October 22, 2011, and with respect to "any and all investigations . . . into any and all officer[s] against any and all prisoner[s] during his tenner [sic] as superintendent."   (Dkt 178 at 3-4).

Former Superintendent Bezio retired from his position at Great Meadow Correctional Facility in June 2011, some four months before the incident even occurred.  (*See* Dkt 149 at 6). The Court also dismissed all claims against former Superintend Racette (who is also now retired from State service), holding that "Plaintiff fails to submit any direct or circumstantial evidence suggesting that correctional officers routinely assault inmates housed at Great Meadow Correctional Facility. As a result, Plaintiff falls exceedingly short of his burden to prove a 'longstanding, pervasive, well-documented' history of [such] attacks . . ."  (Dkt 149 at 9).

The law of the case doctrine "'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *DiLaura v. Power Auth.*, 982 F.2d 73, 76 (2d Cir. 1992) (*quoting In re PCH Assocs.*, 949 F.2d 585, 592 (2d Cir. 1991)); *see also NLRB v. Coca-Cola Bottling Co.*, 55 F.3d 74, 77-78 (2d Cir.

1995).  Under the doctrine, the district court should decline to revisit earlier rulings in the same case, absent a change in the applicable law or newly discovered evidence, or correct a manifest injustice; "where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again."  *Zdanok v. Glidden Co.,* 327 F.2d 944, 953 (2d Cir. 1964).  Applying the doctrine in this case, the Plaintiff should be precluded from attempting to resuscitate previously-dismissed claims, including all claims for injunctive relief, at the upcoming trial.  Rather, the upcoming trial should focus upon the only claim that remains for determination by the jury: an Eighth Amendment claim that the remaining Defendants subjected Plaintiff to excessive force, or failed to intervene to prevent excessive force on Plaintiff by others, on October 22, 2011.

**2.     The Court should preclude Plaintiff from presenting evidence about alleged incidents of excessive force other than the incident of October 22, 2011.**

Insofar as Plaintiff seeks to admit evidence relating to uses of force involving other, non-party inmates, such as a Use of Force Report relating to an inmate named Brandon Rosado (*see* Dkt 199 at ¶ 9), Defendants oppose the admission of such proof.  Any such documentation is irrelevant to this proceeding (FRCP 402).  To the limited extent that any use of force report involving another inmate or other correctional staff may be relevant, the unfair prejudice imposed on Defendants far outweighs the probative value of such proof.  FRCP 403.

Plaintiff previously requested that Defendants' personnel files be submitted to the Court for in-camera review during the course of discovery in this matter.  Magistrate Judge Treese conducted such a review, and identified a single document in the file of C.O. Brockley that appeared to be "relevant" and ordered to it be provided to Plaintiff's court-appointed counsel (but

not the Plaintiff personally) on November 4, 2013.  (Dkt 59).   The Court should exclude any other such evidence at trial.

Proof of other alleged excessive force incidents involving the Defendants – if there were any -- would be objectionable under Rule 404 as it would constitute a prior bad act, offered to show that a particular Defendant on the occasion in question acted in conformity with his or her character.  Evidence pertaining to uses of force relating to non-party correctional staff – such as the Brandon Rosado incident – is even more tenuously offered, to suggest that other correction officers have engaged in excessive use of force at Great Meadow.  In the same vein, the Court should preclude Plaintiff from offering his opinion that the stairways in B-Block (or any other part of the facility) have a reputation as a dangerous location where inmates get "beat up" by correctional staff.  Such proof would be utterly irrelevant to any issue in this proceeding, offered only for unfair, prejudicial purposes.

**3.     The jury should be instructed that Plaintiff may not recover damages relating to the adequacy of his medical care, or arising out of his placement in disciplinary confinement after the incident of October 22, 2011.**

None of the Defendants were involved in providing medical treatment to Plaintiff after the incident of October 22, 2011.  Though the Complaint originally had asserted such a claim against Nurse Depalo, it was dismissed at Plaintiff's request on July 22, 2014.  (Dkt 123.)

In addition, no Due Process claim is asserted against the Defendants in the Complaint, and none of the Defendants played any role in the subsequent inmate disciplinary hearing that took place after the incident, except insofar as they may have prepared or co-signed a Notice of Discipline (or "ticket"), or may have been called as witnesses at the subsequent Tier III hearing,

which resulted in the imposition of eighteen months' confinement in Special Housing. Had such a claim been asserted by Plaintiff, it would have been without merit. *See generally* Davis v. Scherer, 468 U.S. 183, 193 (1984); Bolden v. Alston, 810 F.2d 353, 358 (2d Cir.), *cert. denied*, 484 U.S. 896 (1987); Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986) ("prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest"); *see also* Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1997) ("[A] prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report.").

Though it is likely that the jury will learn that a Tier III disciplinary hearing took place, the Court should expressly advise them that there is no claim before them arising out of that hearing or its outcome. The length of any SHU time that plaintiff received is irrelevant, plaintiff is foreclosed from seeking any damages based on such confinement, and he should be foreclosed from offering any proof in that regard.

**4.    The Court should preclude Plaintiff from offering statutes, regulations, and prior filings in this litigation, such as discovery requests and responses, and orders from the Court pertaining to discovery or motion practice.**

Plaintiff's exhibit list includes a number of federal and state statutes, including Public Officers Law §§ 11, 12, 17, and 20; N.Y. Civil Service Law §§ 62 and 75; N.Y. State Corrections Law §§ 45, 70, 137 and 138; Public Officers Law § 74; N.Y. State Constitution, Article 1; and the Eighth and Fourteenth Amendments of the U.S. Constitution. (Dkt 199, ¶¶ 3, 4, 5, 7, 8). These and any other statutes or legal authority listed on Plaintiff's exhibit list should be excluded. Many of the listed statutes listed in Plaintiff's exhibit list are irrelevant to the matters

before the jury for consideration. These documents are also merely being offered as legal argument, which is improper. FRCP 402 and 403. To the extent necessary or appropriate, the Court may take judicial notice of any of these statutes, and to the extent the jury may require such information, the Court may so instruct the jury. Documentary evidence of these statutes is unnecessary, cumulative, and potentially confusing or misleading to the jury. FRCP 403.

To the extent Plaintiff intends to offer the "New York State Employees Manual" (Dkt 199 ¶ 2), this document has no relevance in the matters of the case and may confuse the jury or cause undue delay. FRCP 403. The New York State Employees Manual was not provided in discovery, but a redacted copy has been provided by the undersigned to Plaintiff's counsel; privileged or confidential information has been redacted at the request of DOCCS Counsel. Defendants would object to its admission at trial. FRCP 402.

Plaintiff's exhibit list includes a number of responses to discovery demands propounded by Plaintiff to the remaining Defendants. (Dkt 199, ¶¶ 20, 21, 22, 23, 24). Discovery documents, including a Defendant's Responses to Interrogatories, Modified Interrogatories, or Requests for Admission may be properly employed on cross-examination of a particular Defendant, as a prior inconsistent statement under Rule 613(b). To the extent that such discovery documents are consistent with the in-Court testimony of the Defendants, the offer of such discovery materials would be cumulative, a waste of time, and confusing or misleading to the jury. FRCP 403.

To the extent Plaintiff seeks to introduce the Responses made by former Defendants Steven Racette or Norman Bezio to Plaintiff's Interrogatories or Modified Interrogatories (Dkt 199 at ¶¶ 22, 24) or the Declarations made by Racette or Bezio (Dkt 199 at ¶¶ 40, 41), these

Defendants were dismissed from these proceedings.  Accordingly, there is no basis for receiving such discovery documents as admissions by a party under Rule 801(d)(2), and they would be irrelevant, hearsay, speculative, and unduly prejudicial.  FRCP 403.

Plaintiff's exhibit list includes the Plaintiff's Complaint dated September 9, 2012 and the transcript of Plaintiff's deposition dated December 27, 2013 (Dkt 199, ¶¶ 13, 25).  Such documents may properly be employed for purposes of cross-examination of Plaintiff, but there is no evidentiary basis for Plaintiff to offer them in evidence during his case-in-chief.  To the extent Plaintiff wishes to introduce such exhibits to buttress his in-person testimony at trial, this documentation would be cumulative, prejudicial, and would cause undue delay at trial.  FRCP 403.

Finally, Plaintiff seeks to introduce prior Decisions or Orders issued by this Court regarding discovery, non-dispositive or dispositive motions, and documents related thereto, (see Dkt 199 at ¶¶ 29-39,  ¶¶ 42-44,  ¶ 46 and ¶¶ 50 - 54), these documents should be excluded as irrelevant, cumulative, potentially causing undue delay, and unduly prejudicial.  FRCP 403.

**5.     The Court should preclude Plaintiff from calling multiple GMCF medical staff to testify about his medical care.**

Plaintiff stipulated to dismissal of all claims relating to the medical care he received from Nurse DePalo in the wake of the incident of October 22, 2011, and the jury will not be called upon to address any question concerning the quality of medical care that Plaintiff received.  The Defendants recognize that all the medical records pertaining to the Plaintiff's care are not self-explanatory, and they intend to call as a witness Physician's Assistant Fisher "Ted" Nesmith, who is also on Plaintiff's witness list.  P.A. Nesmith examined and treated the Plaintiff at the

facility infirmary immediately after the incident and can be called upon to authenticate and interpret all DOCCS medical records that pertain to Plaintiff's injuries, whether or not he personally prepared them.

Plaintiff's proposed witness list also includes Dr. David Karandy (a treating physician and GMCF's Facility Health Services Director), Dr. David Thompson, and Nurse DePalo.  Given P.A. Nesmith's availability to authenticate and interpret the medical record, it would be unnecessary and redundant for the jury to personally hear from each and every witness who may have made an entry in Plaintiff's medical record.  Moreover, it would work an undue hardship on GMCF's medical staff -- and ultimately the inmates they serve -- if all of these proposed medical witnesses were required to spend a day in Albany to testify at the upcoming trial.  Such witnesses should be precluded under Rule 403 (evidence, though relevant, may be excluded "if its probative value is substantially outweighed a danger of . . . undue delay, wasting time, or needlessly presenting cumulative evidence").

It is noteworthy that Plaintiff called for testimony from Dr. Karandy in the context of a prison disciplinary hearing that took place in the wake of the incident of October 22, 2011, and the Plaintiff elicited from Dr. Karandy an opinion that might be appropriately asked of an expert witness, but not of a treating physician.  Plaintiff asked "What's the relative force to require to, to uh, fracture a rib?" to which Dr. Karandy responded: "Well --- substantial force."  (Tier III Hearing Transcript, p. 32).  Neither side in this case has identified any expert witness to testify in this matter.  At this late date, after discovery has long been closed, any effort by Plaintiff to advance any expert testimony would be disallowed for failure to comply with FRCP Rule 26(a)(2), and would be fundamentally unfair.  *Melino v. Miller*, 2010 U.S. Dist. LEXIS 79374 at

*5-*10 (N.D.N.Y. 2010) (Suddaby, D.J.).   Finally, although Dr. Karandy might properly be examined as a fact witness in his capacity as a treating physician, he should not be subpoenaed to serve as an unretained and uncompensated "expert" to offer opinion testimony on behalf of the Plaintiff pursuant to Rule 702.

For the foregoing reasons, the Court should foreclose Plaintiff from calling Dr. Karandy, Dr. Thompson, or R.N. DePalo at the upcoming trial.

**6.    The Court should preclude Plaintiff from calling attorneys employed by Prisoners' Legal Services, or offering documents pertaining to such attorneys' evaluation of this case.**

Plaintiff's witness list includes two attorneys employed by Prisoners' Legal Services, James Bogin and Andrew Rikard, who apparently at one time evaluated Plaintiffs case but ultimately declined to represent him in this litigation, instead providing him with the paperwork to file a notice of intention to file a claim in the State Court of Claims.  Any testimony from these individuals would be irrelevant to the issues properly before the jury, and would also be inadmissible hearsay.  To the extent that Plaintiff seeks to advance such witnesses as "experts" to render opinions regarding the incident of October 22, 2011, Plaintiff has failed to provide the required expert disclosure mandated under Rule 26(a)(2).  In the same vein, the Court should preclude Plaintiff from offering correspondence or draft pleadings prepared by such attorneys (*See, e.g.*,  Dkt 199, ¶ 47).

**7.    The Court should preclude Plaintiff from calling C.O. Lennox.**

The evidence will show that one of the Defendants in this action, C.O. Charron, videotaped the escort of Plaintiff to the GMCF infirmary, and he was relieved part way through

the videotape by C.O. Lennox, who continued taping Plaintiff while he was at the infirmary. Plaintiff indicates he wants to call C.O. Lennox "to testify about at what point he relieved Officer Charron, [and] what Lennox witnessed through the lens of that camera." Dkt 178 at p.3. The videotape itself will be offered in evidence at the upcoming trial, and it constitutes the best evidence of what would have been observed through the lens of the camera. Any further testimony from Officer Lennox would be barred under the best evidence rule and Rule 403 as a waste of time and needless cumulative evidence. Further, there is no claim by the Plaintiff that any Defendant violated his rights at any time after the video recorder was turned on at the outset of the recording, so the question of when the camera was passed from one officer to the other is simply irrelevant.

Date: May 17, 2016

ERIC T. SCHNEIDERMAN
Attorney General of the State of New York
Attorney for Defendants
The Capitol
Albany, New York  12224-0341

By:

*Melissa A. Latino*
Melissa A. Latino, AAG
Bar Roll No.  511162
Telephone: (518) 776-2593

*David B. Roberts*
David B. Roberts, AAG
Bar Roll No.  102455
Telephone: (518) 776-2287