UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

LANCE CARTER,

                                    Plaintiff,

-vs-

M. BROCKLEY, K. ANDERSON,
B. NORTH, A. CHARRON, C.S. COLLINS

                                    Defendants.

MEMORANDUM OF LAW IN OPPOSITION TO EVIDENTIARY ISSUES
RAISED IN DEFENDANTS' TRIAL BRIEF

9:12-CV-1746

Plaintiff, LANCE CARTER, by and through his attorney KAREN BUTLER, ESQ., submits this Memorandum of Law in Opposition to the arguments advanced in Point III of the Defendants' Trial Brief (Document #210) with regard to the Evidentiary Issues raised therein.

<u>Plaintiff's Mental Health History</u>

Defendants argue that defense counsel should be permitted to cross-examine plaintiff about his purported history of having bipolar disorder. Defendants argue that the jury should be permitted to hear testimony on this issue in order to weigh plaintiff's credibility and assess whether his mental health issues played a role in the incident in question.

While it is well settled that a party waives their doctor-patient privilege when their medical condition is placed into issue in a civil lawsuit, a plaintiff

does not forfeit their privacy rights with respect to psychotherapy treatment merely by asserting a claim that does not include psychological damage. Rich v. Tee Bar Corp., 2013 U.S. Dist. LEXIS 139054 (NDNY Sept. 27, 2013). Further, plaintiff does not forfeit this privilege by stating that he/she suffers from a psychological condition for which no damages are sought. Id.

Here, Defendants seek to introduce Plaintiff's mental health records for impeachment purposes, by submitting to the Jury that he has bipolar disorder, which could have "played a part in the October 22, 2011 incident." Defendants further claim that Plaintiff concedes the relevance of his psychiatric history by failing to argue that same should be excluded in his second motion in limine. This claim is without merit.

Plaintiff, in commencing the herein 1983 action, does not claim any emotional injury. Plaintiff has therefore not placed his mental health condition at issue, and therefore has not forfeited his privacy right to this information. As plaintiff has not asserted a claim for psychological damage arising from this incident, introduction of his mental health records would be in error.

Defendant has articulated no basis for introduction of Plaintiff's mental health records, or any mental health information. Therefore, this evidence is impermissible character evidence that may not be presented at trial, and may not be permitted on Defendants' cross-examination of Plaintiff.

### Plaintiff's Inmate Disciplinary Record

Defendants argue that plaintiff's inmate discipline record should be admissible at trial for the purpose of rebutting Plaintiff's testimony that CO Brockley was motivated to assault him in 2001 because of a past incident. Defendants argue that this is "important proof" that Brockley lacked any motive to use excessive force on plaintiff in October, 2011. Defendants argue that this evidence is essential to their defense, to rebut a theory that Plaintiff has placed in issue.

The document attached as an exhibit to Defendant's trial brief (Lodged at Docket # 216 and # 216-1) contains vague references to "assault" and "disruptive behavior," among other vague disciplinary violations that plaintiff was cited for. There are no specifics about the events contained in the disciplinary record and this document neither substantiates, nor refutes, Plaintiff's allegation that he spit at C.O. Brockley. In fact, defendant Brockley testified at a hearing on November 15, 2011, that he had some kind of problem in the BHU (behavioral health unit) with inmate Carter where "either he spit or throwing on me" (Exhibit A, p 000243-000244). CO Brockley further testified that "it happened quite a bit up there (in the BHU), so [...] to keep it straight who did what up there, [...] I'd have to have a rolodex," (Exhibit A, p000244).

Defense counsel has failed to establish in her brief, how the disciplinary record is probative with respect to their claim that Plaintiff did not spit at C.O Brockley in the past. Furthermore, these records are not certified or

authenticated and there is no way of knowing whether the records are, in fact, complete. To the extent that these records are being offered to show the absence of an event, it is significant that the records are not certified as complete and accurate.

Nor is plaintiff's disciplinary record necessary to defend against plaintiff's claim that the attack in question was retaliatory for a previous altercation between plaintiff and C.O. Brockley. As defendant Brockley will be a witness at the trial in this matter, defendant Brockley may testify as to his own, personal, recollection about whether plaintiff spit in his face, as well as his thought process during the October, 2011 incident.

Defendants further argue that Plaintiff's Inmate Disciplinary Record is admissible at trial under FRE 404 and 406 to show a pattern of assaultive behavior towards authority figures, particularly against corrections officials. Defendants argue that this evidence is "inexplicably entwined" with the instant case, and that it should be admitted to provide background. Defendants go on to argue that Plaintiff's Inmate Disciplinary Record should be admitted as habit evidence under FRE 406 as Plaintiff has a "clear habit of escalating violence toward staff." Finally, Defendants argue that Plaintiff's Inmate Disciplinary Record exhibit his modus operandi, and demonstrate his reaction to authority directives, confrontation, or provocation.

Federal Rule of Evidence 404(b) states that "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to

show conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Rule 404(b) prohibits the introduction of character evidence to show that an individual has a certain predisposition, and acted consistently with such predisposition during the event in question. Lombardo v. Stone, 2002 U.S. Dist. LEXIS 1267 (S.D.N.Y. January 28, 2002).

The rationale behind this well-settled precept is that character evidence "is of slight probative value and may be very prejudicial. It tends to distract the trier of fact from the main question of what actually happened on the particular occasion. It subtly permits the trier of fact to reward the good man and punish the bad man because of their respective characters despite what the evidence in the case shows actually happened." Id. An inmate's disciplinary record is not admissible to support the inference that an inmate had a penchant for violent conduct. Holloway v. Mitchell-Odey, 488 F. Supp. 2d 239 (NDNY 2007) (Kahn, J.). Rule 404(b) almost always bars the admission of disciplinary records of a prison inmate. Id.

At issue in this case is whether the defendant corrections officers initiated the incident on October 22, 2011, or whether this altercation was initiated by the plaintiff. The plaintiff's disciplinary record has no relevance to this issue, except to demonstrate that the plaintiff had a propensity to assault an authority figure without provocation. As Defendants are clearly seeking to

present these records to the Jury to show that Plaintiff had a penchant for violence, these records must be excluded under FRE 404(b).

Defendants advance the tenuous argument that the disciplinary record, which contains references to assault, disruptive behavior, and contraband, must be admitted to show habit and modus operandi. Habit is conduct that is situation specific while character is a generalized description of a person's disposition or a general trait such as honesty, violence, or peacefulness. Zubulake v. UBS Warburh LLC, 382 F. Supp. 2d 536 (SDNY 2005). Here, there is no question that a pattern of assault is character evidence, and may not be characterized as habit evidence. Courts must be cautious in admitting habit evidence due to the possibility that such evidence will be used to establish propensity to act in conformity with its general character, which undermines Rule 404's prohibition against character evidence except in certain situations. Id.; *quoting* Simplex, Inc. v. Diversified Energy Sys., Inc. 847 F.2d 1290, 1293 (7th Cir. 1988). Defendants' claim that Plaintiff's disciplinary record establishes modus operandi is especially attenuated as Plaintiff is not on trial for assault. Similarly, the Defendants' claim that these records should be admitted to provide "background" is another thinly-veiled attempt to admit impermissible propensity evidence.

Moreover, introduction of such evidence will only prolong the trial as the plaintiff will be forced to defend multiple previous incidents including evidence of the culture in the Department of Corrections and previous assaults by corrections staff against inmates. At the very least introduction of

this evidence will necessitate multiple trials within this trial as the plaintiff will have no choice but to defend each and every previous episode going back to 1989.

As there is no argument advanced to admit the Plaintiff's disciplinary records, other than to show propensity, or conformity during the occurrence in question, these documents provide no probative value, and introduction of this evidence would severely prejudice the plaintiff and would result in an unduly and unnecessarily lengthy trial. Therefore, the plaintiff's disciplinary history should be excluded at trial.

### Plaintiff's Prior Convictions

Defendants seek to admit evidence of plaintiff's prior felony and misdemeanor convictions at trial. At the outset, FRE 609 unequivocally states that evidence of any crime punishable by death or imprisonment of more than one year, may only be admitted at trial if the probative value of the evidence outweighs its prejudicial effect to that defendant. With respect to crimes that are not punishable by death or more than one year, the evidence may only be admitted if the elements of the crime prove a dishonest act or a false statement.

Here, the prejudicial effect of introducing the plaintiff's record of convictions greatly outweighs any probative value that it may have in this case. Where past convictions have factual similarities to the incident in question in a 1983 case, the prejudicial effect of such evidence greatly

outweighs any probative value, and must be excluded pursuant to FRE 403. Holloway v. Mitchell-Oddey, 488 F.Supp 2d 239 (NDNY 2007) (Kahn, J.).

Here, plaintiff's prior convictions that Defendants seek to admit are for assault. The issue in question in this case is whether the Corrections Officers or the Plaintiff initiated the October, 2011 incident, which can be described as an assault, the plaintiff's prior convictions are factually similar and would severely prejudice the plaintiff, if introduced. As argued above, evidence of prior crimes or bad acts are not admissible character evidence when these prior acts merely show conformity or propensity. Therefore, Defendant's motion to admit evidence of plaintiff's prior convictions fails, as this evidence is not probative to the present civil rights lawsuit, and would significantly prejudice the plaintiff.

### Conclusion

For the reasons stated above, Defendants' request to admit plaintiff's disciplinary record, mental health records, and prior convictions should be denied, and such evidence should be precluded at the trial in this matter.

Dated: May 31, 2016         Yours, etc.

                            Thuillez, Ford, Gold, Butler & Monroe, LLP

                            By: /s/ Karen A. Butler
                            _____
                            Karen A. Butler
                            Bar Roll No. 508049
                            *Attorneys for Defendant,*
                            *Lance Carter*
                            20 Corporate Woods Boulevard
                            Albany, NY 12211
                            (518) 455-9952

To:   David Roberts (david.roberts@ag.ny.gov) federal.papers@ag.ny.gov
      Melissa A. Latino (melissa.latino@ag.ny.gov) federal.papers@ag.ny.gov
      James.mcgowan@ag.ny.gov

Lance Carter
98-B-0249
Sing Sing Correctional Facility
354 Hunter Street
Ossining, NY 10562

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

LANCE CARTER,

                                                          Plaintiff,

-vs-

M. BROCKLEY, K. ANDERSON,
B. NORTH, A. CHARRON, C.S. COLLINS

                                                          Defendants.

## CERTIFICATE OF SERVICE
Case No. 9:12-CV-1746

I hereby certify that on May 31, 2016, I electronically filed the foregoing Opposition to Defendants Evidentiary Issues with the Clerk of the Northern District Court using its CM/ECF system, which would then electronically notify the following CM/ECF participants on this case:

David Roberts (david.roberts@ag.ny.gov) federal.papers@ag.ny.gov
Melissa A. Latino (melissa.latino@ag.ny.gov) federal.papers@ag.ny.gov
James.mcgowan@ag.ny.gov

And I hereby certify that I have mailed the foregoing, by the United States Postal Service, to the following non-CM/ECF participants:

Lance Carter
98-B-0249
Sing Sing Correctional Facility
354 Hunter Street
Ossining, NY 10562

                                                                               /s/ Christine A. Follos

# EXHIBIT "A"

IM: WHY DID BROCKWAY HAVE TO LEAVE THE SCENE? BROCKWAY WAS DOING SOMETHING THAT HE WASN'T SUPPOSED TO BE DOING AS FAR AS MY CONDITION.

HO: UH, AGAIN THAT IS SOMETHING YOUR GOING TO HAVE TO ADDRESS TO THAT WITNESS. OKAY I WAS SAYING UH, WHAT I INTEND TO DO THEN IS TO STOP THE TAPE AND MAKE TELEPHONIC COMMUNICATION. IT'S UP TO UH, MR. BROCKWAY, C.O. BROCKWAY AND UM, WE'LL TAKE IT FROM THERE ALRIGHT?

IM: OKAY.

HO: OKAY, THE TIME IS 1:35 PM. THAT CONCLUDES THIS PORTION OF THE HEARING.

HO: IT IS 1:40 PM. THE DATE IS UM, NOVEMBER 30TH 2011. THIS IS A CONTINUATION OF THE TIER 3 HEARING FOR LANCE CARTER 98B0249. MY NAME IS ANDREW HARVEY COMMISSIONER'S HEARING OFFICER. ALSO PRESENT.

CO: OFFICER BEZIO.

HO: AND MR. CARTER.

IM: LANCE CARTER 98B0249

HO: AND I HAVE ON THE PHONE OFFICER WOULD YOU IDENTIFY YOURSELF PLEASE?

CO: OFFICER BROCKWAY.

HO: UH, ACTUALLY OFFICER BROCKWAY UH, I CALLED YOU AS A WITNESS IN THIS MATTER. JUST TO LET YOU KNOW IT'S BASED UH, IT'S A TIER 3 BASED ON TWO SEPARATE MISBEHAVIOR REPORTS, ONE AUTHORED BY YOU. UH, AND ONE AUTHORED BY CO ANDERSON. YOU CHARGED MR. CARTER WITH VIOLENT CONDUCT, ASSAULT ON STAFF AND REFUSING DIRECT ORDER. DATE OF ALLEGED INCIDENT IS LISTED AS UH, 10/22/11, TIME, ABOUT 5:10 PM. LOCATION B-3 UH, STAIRWELL. UH, ALRIGHT I GOT SOME QUESTIONS FOR YOU. MR. CARTER UH, WILL ALSO HAVE THE RIGHT TO ASK YOU QUESTIONS. HE OF COURSE HAS TO ASK THE QUESTIONS THROUGH ME AND THEN I WILL ASK THE QUESTION IF IT'S APPROPRIATE , SO, UM, WE ALL SET?

CO: YEAH.

HO: OKAY. SO UH, WONDER IF YOU COULD JUST DESCRIBE WHAT OCCURRED UH, THAT UH, PARTICULAR DAY AND APPROXIMATE TIME WITH REGARD TO MR. CARTER. AS I UNDERSTAND YOU WERE ESCORTING HIM BACK TO HIS CELL.

CO: YES I WAS, WE UH, IT WAS RIGHT BEFORE _____ BEEN UH, ONE POINT GONE BACK B-3 COMPANY, UM, I HAD ESCORTED HIM UP TO THE HOSPITAL AND WAS BRINGING HIM BACK TO HIS CELL THAT, TO UH, PACK UP UH, I THINK HE WAS GOING TO BE MOVING.

18

HO: OKAY. AND, AND WHAT HAPPENED WHEN YOU GOT UP ON THE UH, BY THE, OR IN THE STAIRWELL.

CO: UH, AS WE WERE GOING UP HE UH, AS HE WAS COMING UP TO B-3, HE, HE BEGAN VERBALLY UH, BEING INAPPROPRIATE AND I TOLD HIM TO STOP TALKING. AS WE GOT UP THERE HE TURNED AND GOT TO THE COMPANY AND THEN HE SAID SOMETHING ELSE AND THEN TURNED ON ME AND SWUNG AND I _____ TO _____ MY CLUB.

HO: OKAY, UH, YOU SAID FORCE WAS UH, USED BY YOU AND OTHER INDIVIDUALS THAT RESPONDED ALSO?

CO: YES.

HO: ALRIGHT. WELL ACCORDING TO THIS UH, UM, THE MISBEHAVIOR REPORT UH, YOU ALLEGED THAT CARTER KICKED YOU IN THE CHEST, BIT YOU IN THE RIGHT ARM OR ELBOW AND SCRATCHED THE RIGHT SIDE OF YOUR FACE AND EAR. IS THAT RIGHT?

CO: YEAH.

HO: ALRIGHT, THAT HAPPENED DURING THE USE OF FORCE?

CO: YES IT DID.

HO: ALRIGHT, WHEN HE, YOU SAY HE ABRUPTLY TURNED AND SWUNG AT YOU, DID HE STRIKE YOU OR DID HE MISSED?

CO: NO, HE MISSED, AND, AND THAT'S WHY PUSHED HIM AWAY WHEN HE UH, HE WENT DOWN THAT'S WHEN HE KICKED ME IN THE CHEST.

HO: OKAY.

CO: I WAS TRYING TO, I WAS PULLING HIM TO RESTRAIN HIM AND THEN, THAT'S WHEN, AS I APPROACHED HIM HE KICKED ME IN THE CHEST.

HO: NOW, UH, DO YOU KNOW MR. CARTER UH, FROM THIS FACILITY, UH, HAVE YOU EVER HAD ANY EXPERIENCES WITH UH, MR. CARTER, YOU KNOW HIM AS A INMATE HERE?

CO: YES. HE USED TO BE UP IN UH, BHU, WHERE I USED TO WORK UM, AND I, I KNOW THERE WAS A PAST INCIDENT, BUT IT, I HONESTLY COULDN'T TELL YOU WHAT IT WAS, WHAT HAD HAPPENED UP THERE.

HO: SO YOU AND HE HAD SOME KIND OF PROBLEM WHEN YOU HAD WORKED AT BHU?

CO: YEAH. _____.

HO: NOW IF I SAID, THAT, THAT, THAT HE UH, HE, HE SPIT IN YOUR FACE OR SOME SORT OF UH, WOULD THAT REFRESH YOUR RECOLLECTION?

000243

CO:     UH, I KNOW IT WAS SOMETHING, IT WAS EITHER HE EITHER SPIT OR THROWING ON ME, I, I, IT HAPPENED QUITE A BIT UP THERE, SO I DIDN'T, TO KEEP IT STRAIGHT WHO DID WHAT UP THERE, I MEAN I 'D HAVE TO HAVE A ROLODEX OF, OF WHAT HAPPENED UP THERE.

HO:     RIGHT. BUT, WHAT I'M, I GUESS, UH, WHAT, WHAT I'M GETTING AT, ARE THE TWO INCIDENTS RELATED? YOU SAY YOU DON'T HAVE A RECOLLECTION OF WHAT HAPPENED UP THERE. BUT, ARE THEY RELATED AND ANOTHER WORDS IS THIS RETALITORY IN ANY WAY? DID YOU ...

CO:     THAT'S, THAT'S REALLY NOT _____

HO:     ARE YOU GETTING BACK AT MR. CARTER FOR THAT INCIDENT THAT HAPPENED A COUPLE OF YEARS AGO?

CO:     ABSOLUTELY NOT.

HO:     ALRIGHT. WELL, UH, DID YOU INITIATE THIS, YOUR, YOUR MISBEHAVIOR REPORT SAYS THAT HE SWUNG AT YOU. DID YOU SWING AT HIM, DID YOU JUMP HIM FROM BEHIND AS PART OF THIS RETALIATION?

CO:     NO.

HO:     OKAY. ALRIGHT. MR. CARTER UH, THIS IS YOUR OPPORTUNITY TO ASK QUESTIONS. BUT WHAT I WANT YOU TO DO IS...

IM:     _____

HO:     EXACTLY, AND THEN IN TURN I'LL ASK UH, CO BROCKWAY THE QUESTION. SO STANDBY CO BROCKWAY, ALRIGHT?

CO:     YES.

IM:     FOR SOME REASON UH, THIS SHOULD BE APPROPRIATE BUT I DON'T THINK IT IS APPROPRIATE, UH, IT'S NOT CONFIDENTIAL BECAUSE I COULD WRITE INMATE RECORDS AND GET IT. UM, BUT I'D LIKE TO KNOW UH, HOW LONG HE'S BEEN A CORRECTION'S OFFICER?

HO:     THAT, THAT IS REALLY IRRELEVANT QUESTION. I, I GET THAT QUESTION QUITE A BIT AS TO HOW LONG HE'S BEEN A CORRECTION OFFICER. A QUESTION, AND I'M NOT TRYING TO BE UH, _____ ABOUT THIS BUT, THE QUESTION IS DID YOU ASSAULT UH, CO BROCKWAY AS ALLEGED IN THE MISBEHAVIOR REPORT? THAT'S THE SOLE ISSUE, SO WHETHER OR NOT HE'S BEEN A CORRECTIONAL OFFICER FOR 6 MONTHS OR 60 YEARS, IT DOESN'T MAKE ANY DIFFERENCE.

IM:     OKAY, SO THAT, ANOTHER QUESTION. I'D LIKE TO KNOW IF I FELL DOWN THE STAIRS?

HO:     DURING, DURING THIS INCIDENT DID HE FALL DOWN THE STAIRS? DO YOU REMEMBER?

IM:     NO. I ENDED UP ON THE STAIRS DURING THE USE OF FORCE WE ENDED UP ON THE, ON THE STAIRS BUILDING UP TO THE B-4 GALLERY,

000244